IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:11-CR-228-FL

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| ALONZO GARDNER, | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the court on defendant's motion to suppress (DE # 27). Pursuant to 28 U.S.C. § 636(b)(1), United States Magistrate Judge James E. Gates entered memorandum and recommendation ("M&R") wherein he recommends that the court deny defendant's motion to suppress. Defendant timely filed objection to the M&R, to which the government responded. For the reasons that follow, the court ADOPTS the findings of the magistrate judge in full but invites briefing on discrete issues raised by defendant in his objection which did not come before the magistrate judge. Towards this end, final ruling is reserved on the motion to suppress.

## BACKGROUND

Defendant was indicted on August 3, 2011, with being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924. On December 14, 2011, defendant filed the instant motion to suppress. Defendant seeks to suppress all evidence taken from, and statements made derivative from, a search of a residence on July 13, 2011.

The magistrate judge presided over extensive evidentiary hearing January 26, 2012, and February 1, 2012. At the hearing the government presented the testimony of seven officers with the

Raleigh Police Department ("RPD"): Officer Brian Burleson ("Burleson"), Officer Daniel Egan ("Egan"), Officer Matthew Black ("Black"), Lieutenant Charles Rosa ("Rosa"), Sergeant Steve Gunter ("Gunter"), Sergeant Todd Marshburn ("Marshburn"), and Officer Todd Brown ("Brown").

Exhibits offered by the government were admitted without objection by defendant. Defendant presented the testimony of two of his aunts – Lillie Gardner ("Lillie") and Darlene Gardner ("Darlene") – and of Lillie's daughter and his cousin, Consuelo Gardner ("Consuelo"). An exhibit offered by defendant was admitted also without objection by the government. The magistrate judge's detailed M&R presents a thoughtful consideration also of credibility determinations required to be made in assessing the evidence presented.

## DISCUSSION

A.  Standard of Review

The district court reviews *de novo* those portions of a magistrate judge's M&R to which specific objections are filed. 28 U.S.C. § 636(b). The court does not perform a *de novo* review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(c).

B.  Analysis

1.  Legitimate Expectation of Privacy

2

Defendant first objects to the magistrate judge's finding that he had no legitimate expectation of privacy with respect to a storage room attached to the residence such that he may challenge the search of it. "In order to challenge a search under the Fourth Amendment, a defendant bears the burden of proving that he had a legitimate expectation of privacy in the invaded place." United States v. Bullard, 645 F.3d 237, 242 (4th Cir. 2011) (quotations omitted). A legitimate expectation of privacy is made up of two parts. The first is that "the individual seeking Fourth Amendment protection maintains a subjective expectation of privacy in the area searched," and the second is that the subjective expectation be one that "society is willing to recognize as reasonable." Doe v. Broderick, 224 F.2d 440, 450 (4th Cir. 2000) (quotations omitted). While the Fourth Circuit has not specifically addressed the burden of proof placed on the defendant, other circuits agree that it is a preponderance of the evidence. See United States v. Vega, 221 F.3d 789, 795 (5th Cir.2000); United States v. Carr, 939 F.2d 1442, 1444 (10th Cir. 1991); Jones v. Lewis, 874 F.2d 1125, 1134 (6th Cir. 1989).

Defendant asserts he had a legitimate expectation of privacy in the storage room. Certainly there is evidence showing that defendant made frequent and heavy use of this room. He kept a great many personal items, such as a laptop computer and a playpen for his daughter that he would take out when she visited, in that room. (Tr. Suppression Hr'g. II 33:11-15, 35:16-18). He also spent a great deal of time in that room. Consuelo testified that when people came to visit him "sometimes they didn't even knock on the door, they would just go in the storage room." (Id. at 35:4-6).

However, as the magistrate judge noted, defendant used the storage room with the permission of Consuelo. He did not have a key to get into the storage room and had to ask Consuelo for it if he wanted to unlock it. (Id. at 36:6-11). Furthermore, the storage room was not for his private use,

3

rather, anyone in the house who wanted could have gone to the storage room. (Id. at 44:2-45:1).

Moreover, unlike Lillie, defendant did not pay rent to Consuelo and was not a permanent resident of the home. (Id. at 39:24-41:7). He did not have a bedroom, or even a set place to sleep, sometimes sleeping on the living room couch, and sometimes on a futon in Lillie's room. (Id. at 31:19-23).

Thus, the evidence shows that defendant was allowed to use the storage space, but so could anyone else who wanted or asked. He was not a permanent resident of these premises. Consuelo allowed him to live there for the time being and make use of certain space. None of the space was his such that he had a legitimate expectation of privacy in it. Thus, defendant lacks a legitimate expectation of privacy in the storage room, and as such, cannot object to the search of the room.[1]

    2.    Consent

Assuming *arguendo*, defendant had a legitimate expectation of privacy in the room, in the absence of a warrant, police would need another valid justification for their search of the storage room. A search conducted pursuant to valid consent is a well-recognized exception to the warrant requirement. Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973).

        a.    Consent to Search the Storage Room

Defendant objects to the magistrate judge's finding that Lillie gave consent to the police' search of the storage room. "[R]eview of factual findings under the clearly-erroneous standard-with its deference to the trier of fact-is the rule, not the exception." Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 675 (1985). The Supreme Court went on to hold that

"[w]hen findings are based on determinations regarding the credibility of witnesses,

---

[1] The court does *not* decide the issue of whether defendant has a legitimate expectation of privacy in the gun case and duffel bag at this time. See section B.2.c. *infra*.

4

> Rule 52(a) demands even greater deference to the trial court's findings; for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said."

Id.; see also Beatty v. Chesapeake Center, Inc., 818 F.2d 318, 321 (4th Cir. 1987) ("The unique opportunity to observe the demeanor of witnesses requires that the trier of fact's credibility determinations be accorded great deference."). As was noted above, the district court reviews *de novo* those portions of a magistrate judge's M&R to which specific objections are filed. 28 U.S.C. § 636(b). While a "*de novo* determination is not necessarily the same as a *de novo* hearing . . . even as to those findings based on the magistrate's judgment as to the credibility of the witnesses before him," Proctor v. State Government of North Carolina, 830 F.2d 514, 518 n.2 (4th Cir. 1987), "it is unlikely that a district judge would reject a magistrate's proposed findings on credibility when those findings are dispositive and substitute the judge's own appraisal." United States v. Raddatz, 447 U.S. 667, 681 n.7 (1980).

The court has conducted a thorough *de novo* review of the record including defendant's motion to suppress, the transcripts of the hearings before the magistrate judge, the M&R, and defendant's objections thereto, as well as the law governing the matters at issue here. Having done so, the court finds credible the version of the events of the morning of July 13, 2011 related by Rosa, Marshburn, and Gunter. Lieutenant Rosa stated that he asked Lillie for consent to search the house and curtilage, and she asked what curtilage meant. He explained, and she gave her consent. (Tr. Suppression Hr'g. I 54:11-17). As the SEU team searched the house, they became aware of the storage room, and informed Rosa. (Id. at 56:7-9). Rosa testified that although he understood Lillie's consent to search the house and curtilage for defendant to encompass the storage room attached to the house, Rosa double checked with her whether or not they could search this room for defendant,

5

and she consented. (Id. at 60:11-15). Rosa further testified that when the team did not find defendant, but found a gun case and drug paraphernalia that Rosa asked Lillie for her consent for them to search the room for firearms. (Id. at 62:10-14). Rosa then stated that he obtained a consent form from Marshburn, and that Lillie sign the form, at which point, officers returned to search the storage room. (Id. at 64:9-19).

Sergeant Marshburn's testimony corroborates what Rosa said. Marshburn testified that Rosa asked him for a consent form for Lillie to sign. (Id. at 103:17-21). Marshburn retrieved a form, and then said that he explained the form to Lillie, who said she had already given consent. (Id. at 104:20-25). Marshburn further stated that explained that he understood, and that this was a formality, and she did not sign if she did not want to. (Id. at 105:1-6). He testified that Lillie informed him that she lived there, but first wanted to call Consuela. However, when she could not reach Consuela, she signed the form. (Id. at 105:7-17). He testified that at no time did Lillie indicate she could not give consent. (Id. at 106:14-17).

Finally, Sergeant Gunter, leader of the SEU team testified that when the team arrived on the scene, they were briefed by Rosa, and agreed the search would be based upon consent. (Id. at 86:18-21). Gunter stated that he observed Rosa make contact with Lillie, speak with her, and then turn around and give a thumbs up sign indicating consent to search the premises for defendant had been given. At that point, he and the SEU team began their search. (Id. at 87:21-88:14). After being informed of the locked door to the storage room, he stated that he approached Rosa and Lillie. (Id. at 91:13-17). Gunter testified that he told Lillie they found a locked door they would like to search and asked if she had a key to the door, and that she replied that she did not have a key but said to go ahead and search it. (Id. at 91:17-22). They searched, did not find defendant, and ceased

6

searching. (Id. at 93:20-9496:24). Upon informing Rosa that they did not find defendant, but found a weapon and drug paraphernalia, the SEU unit was relieved. (Id. at 97:10-23). Gunter also said that he believed Lillie could go into the locker as it was her house. (Id. at 100:19-21).

Beyond the consistent and straightforward testimony of the above officers, the magistrate judge also had opportunity to observe Lillie's demeanor and, found her less persuasive. He also took note of her familial relationship with defendant, and the fact that she was on medication which affected her memory at the search. He also found the manner of Darlene's testimony that Lillie did not consent to be indicative of less than truthful answers. Finally, the magistrate judge had before him the consent form signed by Lillie. For all these reasons, the court adopts the conclusion of the magistrate judge as its own, that Lillie consented to search of the storage room.

        b.      Authority to Consent to Search of the Storage Room

Defendant next objects to the magistrate judge's holding that Lillie had authority, apparent or actual, to consent to a search of the storage room. Consent need not be given by the defendant, but may be obtained from a third party who "possessed common authority over . . . the premises." United States v. Shrader, 675 F.3d 300, 306 (4th Cir. 2007) (quoting United States v. Matlock, 415 U.S. 164, 171 (1974)). Whether one has common authority over the premises "is not merely a question of property interest. Rather it requires evidence of 'mutual use' by one having 'joint access or control for most purposes.'" United States v. Buckner, 473 F.3d 551, 554 (4th Cir. 2007) (quoting Matlock, 415 U.S. at 171).

Moreover, even if the party does not have actual authority to give valid consent, so long as it was objectively reasonable for police to believe that the party shared authority over the area, evidence obtained in that search will not be suppressed due to the subsequent objection of the co-

7

tenant defendant. Georgia v. Randolph, 547 U.S. 103, 106 (2006); see also Illinois v. Rodriguez, 497 U.S. 177, 188 (1990) ("[W]ould the facts available to the officer at the moment . . . warrant a man of reasonable caution in the belief that the consenting party had authority over the premises?" (quotations omitted)).

There is much evidence as summarized above that Lillie had authority to consent to the search of the storage room. She lived in the house. She contributed financially such that Consuelo described her as paying rent. (Tr. Suppression Hr'g. II 40:18-41:2). She could go into the storage room at any time she liked. (Id. at 44:15-24). Although she wanted to call Consuelo before signing the consent form memorializing her consent to search the storage room, she never indicated to the police that she did not have authority to consent to a search thereof. (Tr. Suppression Hr'g. I 106:14-21). And, as the magistrate judge has observed, the fact that she did not have a key to a room that was accessible only from the outside did not indicate that she did not have authority over that space.

As Consuelo's testimony confirms, the door was locked to prevent thieves from getting in, not those living at the house. (Tr. Suppression Hr'g. II 46:4-8). For a household member with common authority over an outdoor storage room to not have or keep a key to the room is not surprising, nor does it indicate they lacked such authority. The court finds for all these reasons, that Lillie had authority to consent to the search of the storage room.

          c.        Authority to Consent to Search of the Gun Case and Duffel Bag

In his objections to the M&R, defendant raises the issue of whether Lillie had authority or apparent authority to consent to the search of defendant's gun case and duffel bag from which the guns and ammunition at issue were recovered. The government has not addressed this issue, specifically raised in objection denominated "III. The Circumstances Of This Case Provide No Basis

8

For A Reasonable Belief That Lily Gardner Had Authority To Consent To A Search Of The Gun Case And Duffel Bag Found In The Locked Storage Room."

Defendant cites a series of cases for the proposition that one may have, as this court here has found, authority to consent to a search of the room; however, that authority may not extend, as the court found in United States v. Block, 590 F.2d 535 (4th Cir. 1978), to consent to search a container stored by another in that room. As mentioned, the magistrate judge did not specifically consider the particular issue of whether Lillie's authority extended to the locked rifle case and the zipped duffle bag.

The court withholds ruling on the question of whether the facts so found can be said to show Lillie had that authority or, if not, whether any doctrines bearing on the admissibility of the subject evidence would justify actions taken. The court DIRECTS the government file a further response, to which defendant shall have opportunity to respond. No reply will be permitted.

## CONCLUSION

Upon *de novo* review of those portions of the magistrate judge's M&R to which specific objections have been filed, and upon considered review of those portions of the M&R to which no such objection has been made, the court overrules defendant's objections, to the issues specifically considered by the magistrate judge in the M&R, ADOPTS the findings of the magistrate judge in full, and DIRECTS the government to file a response to the issue highlighted above within 14 days from date of entry of this order, to which defendant shall have 14 days to reply. Thereafter the court will take up and decide issue remaining as a part of its final consideration of defendant's motion to suppress.

SO ORDERED, this the 30th day of November, 2012.

_____
LOUISE W. FLANAGAN
United States District Judge

10