IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:11-CR-228-FL

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| ALONZO GARDNER, | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the court on defendant Alonzo Gardner's motion to suppress (DE # 27), filed December 14, 2011. Defendant was indicted on August 3, 2011, with being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924. Defendant seeks to suppress all evidence taken from, and statements made derivative from, a search of a residence on July 13, 2011. For the reasons that follow, the court GRANTS IN PART and DENIES IN PART defendant's motion to suppress.

## BACKGROUND

Pursuant to 28 U.S.C. § 636(b)(1), on August 9, 2012, United States Magistrate Judge James E. Gates entered memorandum and recommendation ("M&R") wherein it is recommended that the court deny defendant's motion to suppress. Defendant timely filed objections to the M&R, to which the government summarily responded.

On November 30, 2012, the court entered order adopting the findings of the magistrate judge in full and overruling defendant's objections to issues considered by the magistrate judge. Defendant also raised objections, however, to issues not expressly considered by the magistrate

judge. To aid in its consideration of the additional issues presented, further briefing was directed by the court. The court turns its attention below to the issues remaining to be decided.

**DISCUSSION**

A.      Standard of Review

The district court reviews *de novo* those portions of a magistrate judge's M&R to which specific objections are filed. 28 U.S.C. § 636(b). As part of the court's obligation "to determine *de novo* any issue to which proper objection is made, a district court is required to consider all arguments directed to that issue, regardless of whether they were raised before the magistrate." United States v. George, 971 F.2d 1113. Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(c).

B.      Analysis

Defendant contends that because Lillie Gardner ("Lillie") had no authority to consent to the police search of the rifle case and duffel bag yielding the weapons that are the subject of these charges, the search was illegal. The government responds that defendant's argument fails for many reasons. First, the government claims that defendant failed to establish standing to challenge the seizure and search of these containers. Second, as to the rifle case only, the government urges that under the "plain view" and "single purpose container" exceptions the seizure and search of this case was legal. Third, the government says that the search for firearms was justified by exigent circumstances. Finally, the government argues that Lillie had both actual and apparent authority to consent to the search of the containers. The court considers each of the government's contentions in turn.

2

1. Defendant's Standing

"In order to challenge a search under the Fourth Amendment, a defendant bears the burden of proving that he had a legitimate expectation of privacy in the invaded place." United States v. Bullard, 645 F.3d 237, 242 (4th Cir. 2011) (quotations omitted). A legitimate expectation of privacy is made up of two parts. The first is that "the individual seeking Fourth Amendment protection maintains a subjective expectation of privacy in the area searched," and the second is that the subjective expectation be one that "society is willing to recognize as reasonable." Doe v. Broderick, 224 F.2d 440, 450 (4th Cir. 2000) (quotations omitted). While the Fourth Circuit has not specifically addressed the burden of proof placed on the defendant, other circuits agree that it is a preponderance of the evidence. See United States v. Vega, 221 F.3d 789, 795 (5th Cir. 2000); United States v. Carr, 939 F.2d 1442, 1444 (10th Cir. 1991); Jones v. Lewis, 874 F.2d 1125, 1134 (6th Cir. 1989).

Locking a container and retaining the key serves as an effective expression of an expectation of privacy in that container. United States v. Presler, 610 F.2d 1206, 1213-14 (4th Cir. 1979). Indeed, simply by placing an object in a closed container one manifests a subjective expectation of privacy in that object. United States v. Villareal, 963 F.2d 770, 773 (5th Cir. 1992).

In this case, defendant has shown he had a legitimate expectation of privacy in the closed containers contained in the storage room. He locked the rifle case and kept the key on his person. (Tr. Suppression Hr'g. I 119:9-14). He kept the duffel bag zipped closed. (Id.). He kept both of these containers in the storage room of Consuelo Gardner's house. Moreover, given Lillie's surprised and angry response to finding out there were guns in the storage closet, it does not appear that defendant revealed the contents of these containers to any of the other residents of the house.

3

(Id. at 61:23-62:2). Thus defendant clearly exhibited a subjective expectation of privacy in the rifle case and bag.

This expectation of privacy was also one that society is willing to recognize as reasonable. The court finds the analogous case of United States v. Waller, 426 F.3d 828 (6th Cir. 2005), useful here.[1] In Waller, friends of the defendant Frederick Alonzo Waller, allowed him to store his belongings in their apartment. Id. at 842. Waller kept some of these belongings in a zipped luggage case, which he stored in the apartment's bedroom closet. Id. at 844. The court found that these circumstances indicated not only a subjective expectation of privacy, but that it was one society was prepared to recognize as reasonable, and thus Waller had a legitimate expectation of privacy. Id. at 844-45.

Similarly in this case, defendant was staying with at his cousin's house while on house arrest. (Tr. Suppression Hr'g II 31:10-18). He did not have a room in the house, and slept on a futon in Lillie's room or in the living room. (Id. at 31:20-23). He stored many of his things in the storage room, including the rifle case and duffel bag. (Id. at 32:3-5). He kept those containers locked and zipped closed, respectively. (Tr. Suppression Hr'g I 118:25-119-12). Thus, as in Waller, defendant had a legitimate expectation of privacy in these containers.

The government contends that regardless of whether defendant actually had a legitimate expectation of privacy, he failed to carry his burden of showing it. The government notes that defendant did not testify regarding his expectation of privacy in these containers at hearing, and that in his objection regarding the illegality of the search of the containers he only stated that Lillie did

---

[1] The court notes that, contrary to defendant's repeated assertions, Waller is *not* a Fourth Circuit case, but a Sixth Circuit case, and therefore is *not* controlling precedent. Nevertheless, the court finds the above analysis from Waller persuasive.

4

not have authority to consent to this search. The government's argument is without merit. Defendant kept the containers closed and, where possible, locked. This alone demonstrates a subjective expectation of privacy. Presler, 610 F.2d at 1213-14; Villareal, 963 F.2d at 773. Moreover, as defendant argues in his supplemental reply, this expectation was a reasonable one. Therefore defendant has carried his burden and has standing to challenge the search of these items.

        2.       Plain View and Single Purpose Container Exceptions

Regardless of the issue of standing, the government argues that the legality of the seizure and subsequent search of the rifle case are supported by the plain view doctrine and "single purpose container" exception. The court agrees.[2]

            a.       Plain View and the Seizure of the Rifle Case

"[L]aw enforcement officers may seize evidence in plain view, provided that they have not violated the Fourth Amendment in arriving at the spot from which the observation of the evidence is made." Kentucky v. King, 563 U.S. ___, 131 S. Ct. 1849, 1858 (2011) (citing Horton v. California, 496 U.S. 128, 136-40 (1990)). Under this "plain view" exception to the warrant requirement,

> a law enforcement officer may seize evidence in "plain view" without a warrant where (1) the officer is lawfully located in a place from which the item can plainly be seen; (2) the officer has a lawful right of access to the item itself; and (3) the incriminating nature of the seized item is immediately apparent.

United States v. Davis, 690 F.3d 226, 263 (4th Cir. 2012).

In this case, the court has already held that the police were lawfully in the storage room pursuant to Lillie's consent to search the room for defendant. Thus when police discovered the rifle

---

[2] The government limits its argument here to the rifle case and does not include the duffel bag. Thus the court does not consider the applicability of these exceptions to the seizure and search of the duffel bag.

5

case in plain view, they were lawfully located in the storage room. The officers also had a lawful right to access the case. Finally, the incriminating nature of the rifle case was immediately apparent. Upon entering the storage room, officers saw drug paraphernalia in plain sight. (Tr. Suppression Hr'g I. 61:18-19). The storage room itself was a small room, (Id. at 95:23-24), so the rifle case was in close proximity to the drug paraphernalia. This proximity makes its incriminating nature immediately apparent as there is a close relationship between drug trafficking and firearms. See United States v. Perry, 560 F.3d 246, 251-52 (4th Cir. 2009) (noting there is a "well-known and attested-to link between drug distribution and firearms"); see also United States v. Ward, 171 F.3d 188, 195 (4th Cir. 1999) ("Guns are tools of the drug trade and are commonly recognized articles of narcotics paraphernalia."). Furthermore, 18 U.S.C. § 992(g) provides that any unlawful user of any controlled substance may not possess a firearm, and 18 U.S.C. § 924(c) prohibits the use of a firearm in furtherance of drug trafficking. Thus the presence of a firearm in close proximity to drug paraphernalia is plainly incriminating and the rifle case was lawfully seized under the plain view warrant exception.

    b.  The "Single Purpose Container" Exception and the Search of the Rifle Case

"[A]lthough the plain view doctrine may support the warrantless seizure of a container believed to contain contraband, any subsequent search of its concealed contents must either be accompanied by a search warrant or justified by one of the exceptions to the warrant requirement. United States v. Williams, 41 F.3d 192, 197 (4th Cir. 1994). One such exception is the so-called single-purpose container exception. This doctrine instructs that search of a container seized pursuant to the plain view doctrine is permissible when "the contents of the seized container are a foregone conclusion." Davis, 690 F.3d at 235. The Supreme Court has specifically held that a gun case is

6

such a container. See Arkansas v. Sanders, 442 U.S. 753, 765 n.13 (1979) (specifically noting that the contents of a gun case "can be inferred from [it's] outward appearance" obviating the need for a warrant to search it), overruled on other grounds, California v. Acevedo, 500 U.S. 565 (1991).

In this case, the rifle case was found in plain view. As it was a gun case, it falls within the single-purpose container exception. Since the contents of the case were a foregone conclusion, no warrant was needed to search this case found in plain view. Accordingly, the court denies the motion to suppress as to the rifle case. The remainder of the court's discussion below concerns the contents of the duffle bag.

3. Exigent Circumstances

The government contends that the search for firearms, including the contents of the duffle bag, was justified by exigent circumstances. The court disagrees. "It is a hallmark of Fourth Amendment jurisprudence that the possibility of a threat to the safety of law enforcement officers may constitute exigent circumstances justifying a warrantless search or seizure." United States v. Moore, 453 F. App'x 401, 403-04 (4th Cir. 2011) (quoting United States v. Legg, 18 F.3d 240, 244 (4th Cir.1994)). This doctrine is only properly asserted where officers possess a reasonable suspicion that exigent circumstances exist at the time of the search or seizure in question. Figg v. Schroeder, 312 F.3d 625, 639 (4th Cir. 2002).

Here, the officers' search for weapons inside defendant's duffel bag was not justified by exigent circumstances where no threat to the safety of the officers existed at that time. By the time the police found, seized, and searched defendant's duffel bag, officers had searched the premises, including the storage room, and confirmed that defendant was not there. The search performed was a thorough one. Sergeant Gunter, leader of the SEU team that conducted the search described it as

7

a "thorough systematic search." (Tr. Suppression Hr'g. 89:3-4). After searching the house, Sergeant Gunter and another SEU officer forced entry into the locked storage room - which had only one entrance and exit. (Id. at 91:17-92:13). They then searched the room and confirmed defendant was not there. (Id. at 93:10-23). Indeed, the SEU team was then relieved as police were confident defendant was not in the house. (Id. at 97:25-98:2). Further, even if defendant returned to the house, there is no reason to believe he could access any weapons. The SEU team, although relieved of its duties to search, was standing by for security on the sides of the house. (Id. at 98:3-5). Moreover police were still in control of the storage room area. (Id. at 96:18-21).

The officers' actions after the SEU search was completed demonstrate the lack of any exigency. Sergeant Gunter informed that after the SEU search for defendant was completed and a weapon found they stopped searching and kept security on the room. (Id. at 96:18-24). And Lieutenant Rosa, who was in charge of the search, stated that had Lillie revoked her consent, police would have "locked it down, retain[ed] custody of the house, and then gotten a search warrant." (Id. at 67:16-24). The search and seizures performed were based on consent, not exigency.

Fourth Circuit caselaw is not contrary. Exigency based on concern for officer safety is found in situations far more threatening than this. See, e.g., United States v. Reed, 935 F.2d 641, 642-43 (4th Cir. 1991) (seizure of a sawed-off shotgun was justified where the was located a mere eighteen inches from a man asleep in the home of known violent felon and officers reasonably thought the sleeping man was that felon); United States v. Legg, 18 F.3d 240, 244-45 (4th Cir. 1994) (officer's unloading of a pistol found in a residence that police were searching was justified where the defendant's family members were present and one such member was unruly and refusing to cooperate); United States v. Moore, 453 F. App'x 401, 404 (4th Cir. 2011) (per curiam) (officers

8

standing by a window near the back door of a house were justified in warrantless entry after hearing defendant say "it's the cops", and seeing defendant's companion point a gun at the front door where other officers were standing). Thus exigency did not justify the search of defendant's closed duffel bag.

    4.    Authority to Consent to the Search

The government finally contends that the authority Lillie possessed to consent to the search of the storage room extended to the search of defendant's closed containers, including the duffel bag. The court disagrees.

        a.    Actual Authority

The government must show by a preponderance of the evidence that it obtained valid consent to search. United States v. Toyer, 414 F. App'x 584, 588 (4th Cir. 2011) (per curiam). In certain circumstances, valid consent may be given by one other than the target of the search. United States v. Block, 590 F.2d 535, 539 (1978). However, two criteria must be met for third party consent to be effective: (1) the third party must have authority to consent to the search, and (2) their consent must be voluntary. Trulok v. Freeh, 275 F.3d 391, 402-03 (4th Cir. 2001). "A third-party has authority to consent to a search of property when she possesses 'common authority over or other sufficient relationship to the ... effects sought to be inspected.'" United States v. Buckner, 473 F.3d 551, 554 (4th Cir. 2007) (quoting United States v. Matlock, 415 U.S. 164, 171 (1974)). Common authority is not a question of property interest, "but requires evidence of mutual use by one generally having joint access or control for most purposes. Such use makes it reasonable to recognize that any of the co-users has the right to permit the inspection in her own right[.]" Toyer, 414 F. App'x at 588 (quotations omitted). Simply because a third party has authority to consent to a search of a general

9

area, that authority does not automatically encompass every enclosed space within that area. Rather "each enclosed space stands on its own bottom for this purpose." Block, 590 F.2d at 541. Indeed, closed containers, when kept semi-permanently in places under the general control of another, are frequently the objects of peoples' highest privacy expectations. Id.

The court has determined that Lillie had joint access to the storage room and thus authority to consent to the search of the room itself. However, her joint access did not extend to defendant's closed containers. The rifle case and the duffel bag belonged to defendant and nothing suggests he allowed anyone else access to them. Rather, he kept the rifle case locked and kept the key. (Tr. Suppression Hr'g. I 123:16-124-5). Nothing suggests he ever gave that key to Lillie or anyone else. As to the duffel bag, it was closed and zipped. (Id. at 119:9-14). There is no indication Lillie or anyone else had ever opened the bag or had the right to open it. Indeed, Lillie's surprised and angry reaction to finding defendant had a gun implies defendant kept the contents of his containers private. Lillie did not have joint access to these enclosed spaces and so did not have authority to consent to the search of defendant's closed containers. See Block, 590 F.2d at 541 (mother had authority to consent to search of her son's room but no authority to consent to search of his footlocker found in the room); Waller, 426 F.3d at 845 (friend of defendant who allowed defendant to shower, eat, and keep his possessions in his apartment did not have the authority to allow police to search through defendant's zipped luggage bag).

      b.     Apparent Authority

The fact that a third party did not have actual authority to consent to a search does not end the inquiry. "As long as 'the facts available to the officer at the moment ... warrant a [person] of reasonable caution in the belief that the consenting party had authority,' apparent authority to

10

consent exists, and evidence seized or searched pursuant to that consent need not be suppressed." Buckner, 473 F.3d at 555 (quoting Illinois v. Rodriguez, 497 U.S. 177, 188 (1990)). Nothing here, however, would suggest to the officers that Lillie had authority to consent to the search of defendant's locked or closed containers. As discussed above, there was no indication that Lillie had joint access or control of the containers. Indeed, her reaction to learning about defendant's gun case shows she did not even know about these containers or their contents. It cannot be said she appeared to have authority to consent to the search of defendant's containers. Therefore neither actual nor apparent authority justified the search of these containers, including the duffel bag. Accordingly, the court will grant the motion to suppress as to the contents of the duffel bag.

## CONCLUSION

For the reasons stated, the court GRANTS that part of defendant's motion that requests exclusion of the firearm and ammunition found within the duffel bag and all statements made derivative therefrom. The court DENIES the motion in its remaining part, of or relating to the rifle case and the contents thereof.

SO ORDERED, this the 30th day of January, 2013.

_____
LOUISE W. FLANAGAN
United States District Judge

11