IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:11-CR-228-FL-1
5:14-CV-511-FL

ALONZO GARDNER, )
)
Petitioner, )
)
v. )
)
UNITED STATES OF AMERICA, )
)
Respondent. )

**MEMORANDUM AND
RECOMMENDATION**

This case comes before the court, in part, on the petition[1] by pro se petitioner Alonzo Gardner ("petitioner") to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 ("§ 2255"). The petition has two parts: a § 2255 petition form (D.E. 106), which does not contain petitioner's substantive allegations, and an accompanying memorandum ("pet'r's mem.") (comprising pp. 1-20 of D.E. 106-1), which does set out his allegations as well as argument. The case is also before the court on the government's motion (D.E. 113) to dismiss the petition and seven motions by petitioner: (1) a motion (D.E. 118) to amend the petition; (2) two motions (D.E. 111, 134-1) to supplement the petition and for documents or information; (3) two motions (D.E. 130, 132) to expedite consideration of the petition; (4) a motion (D.E. 131) to alter the judgment; and (5) a motion (D.E. 133) for an update on the status of the petition (collectively, "related motions"). These matters have been briefed[2] and were referred to the undersigned magistrate judge for a memorandum and recommendation pursuant to 28 U.S.C.

---

[1] The court uses the terms "petition" and "motion" interchangeably herein to refer to petitioner's request under 28 U.S.C. § 2255 and such requests generally.

[2] As noted, petitioner included argument in the memorandum portion of his petition. He also submitted with the petition three witness statements (comprising pp. 21-24 of D.E. 106-1). The government filed a memorandum (D.E. 114) in support of its motion to dismiss, and petitioner filed a response in opposition (D.E. 116). The government did not file responses to the related motions.

§ 636(b)(1)(B) and Rules 8(b) and 10 of the Rules Governing Section 2255 Proceedings ("§ 2255 Rules"). *See* D.E.s dated 23 Dec. 2014, 25 Feb. 2015, 8 June 2015, 13 July 2015, 31 July 2015, 8 Feb. 2016, 1 June 2016. For the reasons stated below, it will be recommended that petitioner's motions to amend, to supplement and for documents or information, and to alter the judgment be denied; petitioner's motions for a status update and to expedite be denied as moot; the government's motion to dismiss be granted; and the petition be dismissed.

## BACKGROUND

### I.    CHARGES AGAINST PETITIONER

On 14 July 2011, petitioner was charged by criminal complaint with possession of firearms, namely, two rifles, and ammunition by a convicted felon on or about 13 July 2011, in violation of 18 U.S.C. § 922(g)(1). Compl. (D.E. 1) 1. The charges arose from a search on 13 July 2011 of the house where petitioner was residing. *See id.* at 2-3. According to the complaint, one rifle, a Vector Arms 7.62x39 caliber rifle, and ammunition were found in a closed bag, and the other rifle, a DPMS model A-15 .223 caliber rifle, and ammunition were found in a gun case. *Id.* at 2. On 3 August 2011, petitioner was indicted for the same offense. *See* Indict. (D.E. 3).

Petitioner's initial appearance was held on 8 September 2011. *See* D.E. 10. At it, the court appointed the Federal Public Defender's Office to represent petitioner. *See* 8 Sept. 2011 Appt. Ord. (D.E. 12); 13 Sept. 2011 Notice of Appear. (D.E. 20).

### II.    PETITIONER'S MOTION TO SUPPRESS

On 14 December 2011, petitioner filed a motion to suppress (D.E. 27) seeking to suppress all evidence seized during the search of the house and all of his resulting statements. On 26 January 2012, the undersigned held the initial session of a hearing on petitioner's motion

to suppress. *See* D.E. 38; Supp'n Hrg. Tr. I (D.E. 68). The hearing was concluded on 1 February 2012. *See* D.E. 42; Supp'n Hrg. Tr. II (D.E. 78).

On 9 August 2012, the undersigned issued a memorandum and recommendation (D.E. 69) ("M&R") recommending that the motion to suppress be denied and making the following findings of fact: On the morning of 13 July 2011, law enforcement officers went to the house where petitioner resided two separate times to serve an arrest warrant on him for his assault on a police officer earlier that day. M&R 3-5, 7-11.[3] The house was owned by petitioner's cousin, Consuelo Gardner. *Id.* at 2, 4. A woman who was both the cousin's mother and one of petitioner's aunts, Lillie Gardner, told police she also resided at the house. *Id.* at 4, 7. Another aunt of petitioner, Darlene Gardner, was present at the house during the police's second visit there. *Id.* at 2, 12.

During the second visit to the house, officers obtained Lillie Gardner's consent to search it for petitioner. *Id.* at 7-8. A selective enforcement unit ("SEU") or so-called "SWAT" team then undertook a search of the interior of the house for petitioner, which was fruitless. *Id.* at 8. When officers located in the back of the house an exterior door that led to what was a storage room, an officer sought Lillie Gardner's consent to search it, and Lillie Gardner consented. *Id.* at 8-9. The officers did not find petitioner there, but they did find in plain view drug paraphernalia and a rifle case that appeared to contain a weapon. *Id.* at 9.

The police reported their discovery to Lillie Gardner, and she consented to further search of the storage room. *Id.* at 9-10. The SEU team left. *Id.* at 11. Officers then undertook the additional search of the storage room. *Id.* They found in the rifle case an assault rifle and

---

[3] Citations herein to page numbers in all documents in the record are to those assigned by the court's CM/ECF electronic filing system.

ammunition, and in a closed duffel bag in the storage room another assault rifle and more ammunition. *Id.*

On 14 August 2012, the court allowed petitioner's counsel to withdraw due to a conflict of interest (*see* D.E. 72), and on 16 August 2012, a member of the Criminal Justice Act Panel entered his appearance as counsel for petitioner (*see* D.E. 73). Through his new counsel, petitioner filed objections (D.E. 74) to the M&R on 25 September 2012.

On 30 November 2012, the presiding district judge entered an order overruling petitioner's objections to the issues addressed in the M&R and adopting, in full, the findings in the M&R. 30 Nov. 2012 Ord. (D.E. 79) 9. However, the court directed further briefing by the government on issues raised by petitioner in his objections to the M&R that were not expressly considered by the magistrate judge. *Id.* Upon consideration of the additional briefing, the court on 30 January 2013 entered an order granting the motion to suppress with respect to the rifle and ammunition found in the duffel bag during the search and all derivative statements, but denying the motion with respect to the rifle and ammunition in the rifle case. 30 Jan. 2013 Ord. (D.E. 82) 11.

## III.    PETITIONER'S CONVICTION AND SENTENCING

On 13 March 2013, pursuant to a plea agreement (D.E. 85), petitioner pleaded guilty to the indictment. *See* Min. Entry at D.E. 83. As part of the plea agreement, petitioner agreed:

> To waive knowingly and expressly all rights, conferred by 18 U.S.C. § 3742, to appeal whatever sentence is imposed, including any issues that relate to the establishment of the advisory Guideline range, reserving only the right to appeal from a sentence in excess of the applicable advisory Guideline range that is established at sentencing, and further to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to 28 U.S.C. § 2255, excepting an appeal or motion based upon grounds of ineffective assistance of counsel or prosecutorial misconduct not known to the [petitioner] at the time of the [petitioner's] guilty plea.

4

Plea Agmt. ¶ 2.c. Further, with the government's consent, petitioner reserved the right to appeal the court's 30 November 2012 and 30 January 2013 orders on the motion to suppress. *Id.* ¶ 5. On 20 June 2013, after adopting the guideline range set forth in the presentence investigation report (D.E. 93) ("PSR")[4] (Sent. Hrg. Tr. (D.E. 136) 21:13-18), the court sentenced petitioner to a term of 105 months' imprisonment and 3 years' supervised release (J. (D.E. 95) 2, 4).

## IV. PETITIONER'S APPEAL

On 28 June 2013, petitioner filed an appeal challenging the court's ruling on the motion to suppress. *See* Appeal Notice (D.E. 97). Specifically, petitioner argued that: (1) Lillie Gardner lacked actual authority to consent to a search of the storage room of the house and that it was unreasonable for the officers to conclude that she had such authority; and (2) the seizure and subsequent search of the rifle case located in the storage room were unlawful under the plain view doctrine because the unlawful nature of the rifle case was not immediately apparent. Appellant's Brief (D.E. 8) 9-17, *United States v. Gardner*, No. 13-4501 (4th Cir. 31 July 2013); *United States v. Gardner*, 554 F. App'x 165, 166-67 (4th Cir. 7 Feb. 2014) (copy filed at D.E. 101). In a decision issued 7 February 2014, the Fourth Circuit rejected petitioner's arguments and affirmed his conviction. *Gardner*, 554 F. App'x at 168.[5]

After issuance of the Fourth Circuit's decision, petitioner's second counsel obtained leave from that court to withdraw based on development of a conflict. *See* 27 May 2014 Ord. (D.E. 37) Allowing Mot. to Withdraw (D.E. 35), *Gardner* (4th Cir.).

---

[4] Citation is to the PSR as revised pursuant to the court's directives at the sentencing hearing. *See* Sent. Hrg. Tr. 7:14-19; 10:12 to 11:1.

[5] The decision refers to the consent at issue to be that of petitioner's cousin, whereas the record is clear that, as indicated, it is the consent of petitioner's aunt, Lillie Gardner, that is at issue. *See*, *e.g*, Appellant's Brief 9-12; 30 Nov. 2012 Ord. 2, 4-12.

## V.  THE § 2255 PETITION, ATTACHED STATEMENTS, AND RELATED MOTIONS

On 15 September 2014, petitioner filed his § 2255 petition.  In it, petitioner asserts that he received ineffective assistance of counsel on the grounds that:  (1) counsel failed to challenge on appeal the voluntariness of Lillie Gardner's consent to search petitioner's residence as a whole (Pet'r's Mem. 4-6; Pet'r's Resp. to Dismissal Mot. 2) ("Ground 1"); (2) counsel failed to object to inclusion of two of petitioner's felony convictions in calculation of his base offense level for sentencing purposes (Pet'r's Mem. 7; Pet'r's Resp. to Dismissal Mot. 3) ("Ground 2"); (3) counsel failed to object during the suppression hearing to application of the plain view exception to the contents of the rifle case found in the storage room (Pet'r's Mem. 8-12; Pet'r's Resp. to Dismissal Mot. 4) ("Ground 3"); (4) counsel failed to challenge on appeal Lillie Gardner's consent to search the storage room specifically (Pet'r's Mem. 13-15; Pet'r's Resp. to Dismissal Mot. 5) ("Ground 4"); (5) counsel failed to move to sequester government witnesses at the suppression hearing (Pet'r's Mem. 16; Pet'r's Resp. to Dismissal Mot. 6) ("Ground 5"); (6) counsel failed to object to application of the two-level upward adjustment for obstruction of justice in determination of petitioner's sentence  (Pet'r's Mem. 17; Pet'r's Resp. to Dismissal Mot. 7) ("Ground 6"); and (7) by failing to effectively challenge the voluntariness of Lillie Gardner's consent to the search of the storage room, counsel left petitioner inadequately informed as to unlawfulness of the search and his guilty plea was therefore not knowing and voluntary (Pet'r's Mem. 18-20; Pet'r's Resp. to Dismissal Mot. 8) ("Ground 7").  Grounds 3 and 5 relate to petitioner's first counsel, and the remaining grounds, Grounds 1, 2, 4, 6, and 7, to his second counsel.

As noted, petitioner attached three witness statements to the memorandum portion of his petition.  One is by Lillie Gardner (comprising pp. 21 of D.E. 106-1), one by Darlene Gardner

(comprising pp. 22 of D.E. 106-1), and the third by petitioner himself (comprising pp. 23-24 of D.E. 106-1). The statements by Lillie and Darlene Gardner concern events on the day of the search of petitioner's residence and largely rehash their testimony at the suppression hearing. *Compare* Lillie Gardner's Stmnt. *with* Supp'n Hrg. Tr. II 58:19 to 60:1; *compare* Darlene Gardner's Stmnt. *with* Supp'n Hrg. Tr. II 14:16 to 15:23. Lillie Gardner's statement is almost identical to a statement by her admitted into evidence at the suppression hearing (Pet'r's Ex. 4). The statement by petitioner concerns communications by him with his second counsel, focusing initially on events relating to the search of his residence and then on other matters. *See* Pet'r's Stmnt.

None of the three statements is sworn, although each bears the signature and a seal of a notary. The notarial signature and seal do not transform the statements into sworn documents. *See Colfield v. Safeway Inc.*, Civ. Act. No. WMN-12-3544, 2016 WL 1242592, at *9 (D. Md. 30 Mar. 2016) (stating that "a notary seal does not transform the statement into an admissible affidavit"); *DeMars v. O'Flynn*, 287 F. Supp. 2d 230. 242-43 (W.D.N.Y. 2003) (finding letters that were notarized but not sworn under penalties of perjury were not affidavits and did not "otherwise qualify as evidentiary proof in admissible form"). Nor do any of the statements meet the requirements for a declaration under 28 U.S.C. § 1764. The statements are therefore not in proper evidentiary form. Moreover, the petitioner does not cite to the statements in memorandum portion of his petition. Nonetheless, the court has, of course, considered the statements in evaluating the petition, treating them as part of the petition.

Petitioner filed the related motions between 29 October 2014 and 13 July 2016. The government filed its motion to dismiss on 2 December 2014.

## APPLICABLE LEGAL PRINCIPLES

### I. STANDARD OF REVIEW FOR § 2255 PETITIONS

Pursuant to 28 U.S.C. § 2255, a prisoner may seek correction or vacation of a sentence on the grounds that: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). A § 2255 motion must be filed within one year from the latest of:

> (1) the date on which the judgment of conviction becomes final;

> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

"In a § 2255 proceeding, the burden of proof is on petitioner to establish his claim by a preponderance of the evidence." *Toribio-Ascencio v. United States*, Nos. 7:05-CR-00097-FL, 7:08-CV-211-FL, 2010 WL 4484447, at *1 (E.D.N.C. 25 Oct. 2010) (citing *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958)). Generally, an evidentiary hearing is required under 28 U.S.C. § 2255 "[u]nless it is clear from the pleadings, files, and records that the prisoner is not entitled to relief." *United States v. Rashaad*, 249 F. App'x 972, 973 (4th Cir. 2007) (citing *Raines v. United States,* 423 F.2d 526, 529 (4th Cir. 1970)).

## II.    MOTIONS TO DISMISS UNDER RULE 12(b)(6) IN § 2225 PROCEEDINGS

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of claims for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A court may consider a motion to dismiss pursuant to Rule 12(b)(6) challenging the legal sufficiency of a § 2255 motion. *See United States v. Reckmeyer*, No. 89-7598, 1990 WL 41044, at *4 (4th Cir. 2 Apr. 1990); Rule 12, § 2255 Rules (expressly permitting application of the Federal Civil Rules where "they are not inconsistent with any statutory provisions or these [§ 2255] rules"); Fed. R. Civ. P. 81(a)(4) (providing that the Federal Rules of Civil Procedure may be applied in § 2255 proceedings where a particular practice has not been specified by § 2255 and where such practice has "previously conformed to the practice in civil actions"); *see also Walker v. True*, 399 F.3d 315, 319 (4th Cir. 2005) (vacating district court's order allowing the government's motion to dismiss petitioner's motion under 28 U.S.C. § 2254 ("§ 2254")[6] because the district court did not properly apply the Rule 12(b)(6) standard when it failed to assume all facts pleaded by petitioner to be true and considered material not included in the petition).

A motion to dismiss should be granted only if "it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). In analyzing a Rule 12(b)(6) motion, a court must accept as true all well-pleaded allegations of the challenged pleading. *Nemet Chevrolet Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also E.I. du Pont de Nemours and Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (court must accept as true all factual allegations of the complaint). All reasonable factual inferences from the allegations must be drawn in the plaintiff's favor. *Kolon*

---

[6] The Federal Rules of Civil Procedure may also be applied to § 2254 motions. *See* Rule 12, Rules Governing § 2254 Proceedings; Fed. R. Civ. P. 81(a)(4).

*Indus., Inc.*, 637 F.3d at 440 (citing *Nemet Chevrolet Ltd.*, 591 F.3d at 253). However, case law requires that the factual allegations create more than a mere possibility of misconduct. *Coleman v. Md. Ct. App.*, 626 F.3d 187, 190 (4th Cir. 2010) (citing *Iqbal*, 556 U.S. at 679). The allegations must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Likewise, a pleading purporting to assert a claim is insufficient if it offers merely "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555 (internal quotation marks omitted)).

In considering a Rule 12(b)(6) motion to dismiss a § 2255 motion to vacate, "the court is not limited to the motion itself [but] . . . also may consider the files and records of the case." *Hannigan v. United States*, 131 F. Supp. 3d 480, 486 (E.D.N.C. 2015), *appeal dismissed*, 638 F. App'x 234 (4th Cir. 2016), *cert. denied*, ___ U.S. ___ (31 Oct. 2016) (internal quotations and citations omitted); *see also Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009) (recognizing in a case brought under 28 U.S.C. § 2254 the propriety of the court's considering "a substantial amount of material from the record of the state habeas proceeding, including affidavits and evidence presented at trial"). In addition, the court may take judicial notice of public records outside the court file. *See Hannigan*, 131 F. Supp. 3d at 485; *see also Kelly*, 589 F.3d at 139. The court must consider exhibits to the petition. *See Kelly*, 589 F.3d at 139.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

To state a claim of ineffective assistance of counsel, a petitioner must satisfy a two-pronged test. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). First, a petitioner must show that the representation he received fell below an objective standard of reasonableness. *Id.*

10

at 688. The reviewing court must be "highly deferential" of counsel's performance and must make every effort to "eliminate the distorting effects of hindsight." *Id.* at 689. Therefore, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* As to the second prong, a petitioner must show that he was prejudiced by the ineffective assistance. *Id.* In the sentencing context, "[p]rejudice exists when an error results in a longer sentence than would otherwise have been imposed. *United States v. Smith*, 497 F. App'x 269, 272 (4th Cir. 2012). With respect to a guilty plea, a petitioner must demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

## DISCUSSION

### I. ABSENCE OF NEED FOR AN EVIDENTIARY HEARING

The court has considered the record in this case and applicable authority to determine whether an evidentiary hearing is needed to resolve the matters before the court. The court finds that the existing record clearly shows that petitioner is not entitled to relief on his claims and that an evidentiary hearing is not needed. See *Rashaad*, 249 F. App'x at 973. The court will therefore proceed without an evidentiary hearing.

### II. PETITIONER'S MOTION TO AMEND

Petitioner's motion to amend, filed 30 January 2015, more than 21 days after the government filed its dismissal motion on 2 December 2014, consists solely of a cover sheet stating, "I'm asking the court to allow me to add these certify [sic] court documents to the 2255 motion." Mot. to Am. (D.E. 118) 1. Attached to the motion are copies of two North Carolina state court judgments of conviction (D.E. 118-1).

As previously discussed, § 2255 proceedings are, in general, governed by the Federal Rules of Civil Procedure. *See* Rule 12, § 2255 Rules; Fed. R. Civ. P. 81(a)(4). Section 2242 of title 28 of the United States Code provides specifically that a § 2255 petition "may be amended or supplemented as provided in the rules of procedure applicable to civil actions." 28 U.S.C. § 2242; *see also United States v. MacDonald*, 641 F.3d 596, 616 n.12 (4th Cir. 2011) ("Rule 15 is applicable to § 2255 motions by way of 28 U.S.C. § 2242, Federal Rule of Civil Procedure 81(a)(4), and Rule 12 of the [§ 2255 Rules].").

Where, as here, more than 21 days have passed after service of the government's motion to dismiss, Rule 15(a)(2) permits amendment of the petition only with the government's written consent or leave of court. The rule further provides that the court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Rule 15 is a "liberal rule [that] gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006); *Intown Props. Mgmt., Inc. v. Wheaton Van Lines, Inc.*, 271 F.3d 164, 170 (4th Cir. 2001) (holding that Rule 15 should be construed liberally "so that claims can be adjudicated on the merits"). Leave to amend is to be granted in the absence of "bad faith, undue prejudice to the opposing party, or futility of amendment." *United States v. Pittman*, 209 F.3d 314, 317 (4th Cir. 2000). An amendment is deemed to be futile if it would not withstand a motion to dismiss. *See Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995) (holding that if an amended complaint could not withstand a motion to dismiss, the motion to amend should be denied as futile).

Here, the state court judgments are for the three convictions (*see* PSR ¶¶ 28, 31, 32) that underlie the assignment of a base offense level of 26 to petitioner in the PSR pursuant to Guidelines Manual § 2K2.1(a)(1) (*see* PSR ¶ 59). In Ground 2, as indicated, petitioner

challenges inclusion of two of these convictions in the determination of his base offense level. The copies of the judgments add nothing material to the information already contained in the PSR regarding these convictions and lend no support to Ground 2. This ground fails for the reasons set forth below. The proposed amendment is therefore futile, and the motion to amend should accordingly be denied.

## III. PETITIONER'S FIRST MOTION TO SUPPLEMENT AND FOR DOCUMENTS OR INFORMATION

By letter filed with the court on 29 October 2014 (D.E. 111),[7] petitioner transmitted to the court a letter dated 20 October 2014 (D.E. 111-1) his counsel had sent him. The letter from counsel provides petitioner information relating to various documents concerning this case that petitioner had apparently previously requested from the clerk's office in an undated letter filed with the court on 4 September 2014 (D.E. 105). [8] The documents discussed in counsel's letter are: a transcript of unspecified grand jury testimony; a transcript of the sentencing hearing; the government's picture (*i.e.*, photographic) exhibits, presumably from the suppression hearing (*see* D.E. 43, Gov.'s Exs. 2-6, 11); "the North Carolina Commitment Judgment Sheet"; and unspecified Raleigh Police incident reports. Counsel's 20 Oct. 2014 Ltr. Petitioner's letter to the court forwarding his counsel's letter asks that counsel's letter "be added to the 2255" and that the court "provide the information requested."

In accordance with the requests set out in petitioner's 29 October 2014 letter, the court will first address his letter as a motion to supplement the petition with the information in his counsel's letter. The court will then address plaintiff's letter as a motion that the court provide him documents discussed in his counsel's letter.

---

[7] The letter is dated 27 October 2014.

[8] The record does not show that the court responded to petitioner's 4 September 2014 letter.

## A. Request for Supplementation

As noted, a § 2255 petition may be "supplemented as provided in the rules of procedure applicable to civil actions." 28 U.S.C. § 2242. Under Federal Civil Rule 15, the court may "permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). "The court may permit supplementation even though the original pleading is defective in stating a claim or defense." *Id.* "[T]he standards used by a district court in ruling on a motion to amend or on a motion to supplement are nearly identical." *Franks v. Ross*, 313 F.3d 184, 198 n.15 (4th Cir. 2002). "In either situation, leave should be freely granted, and should be denied only where 'good reason exists . . . .'" *Id.* (quoting *Walker v. United Parcel Serv.*, 240 F.3d 1268, 1278 (10th Cir. 2001). Futility is a basis for denying supplementation. *See, e.g.*, *Barnes v. United States*, No. 5:09-CR-158-F3, 2016 WL 3453648, at *4 (E.D.N.C. 20 June 2016) (denying a motion to supplement because it was found to be futile).

The court finds that petitioner's request for supplementation of his petition with his counsel's 20 October 2014 correspondence is futile. Even if the supplementary information in counsel's letter were considered with the petition, the petition would not survive the government's motion to dismiss. *See Barnes*, 2016 WL 3453648, at *4; *Gonzalez v. United States*, No. 5:10-CR-172-F-1, 2015 WL 5513186, at *16-17 (E.D.N.C. 16 Sept. 2015) (denying a motion to supplement based on futility).

Specifically, in his letter, counsel explains to petitioner that he previously provided him a copy of the grand jury testimony he was requesting; there was not at the time a transcript of the sentencing hearing, but that petitioner could contract with the court reporter, whose name and address counsel provided, to obtain one; counsel did not have the picture exhibits, but petitioner

could obtain them using information counsel had previously provided him; counsel did not have the commitment judgment sheet because he did not represent petitioner in the cases at issue; and counsel did not know to which incident reports petitioner was referring and did not have copies of the reports on "the state court cases" because he did not represent petitioner in them. Counsel's 20 Oct. 2014 Ltr. There is nothing in counsel's letter supporting the grounds petitioner advances in support of his petition. On its face, counsel's letter evidences no ineffectiveness in his representation of petitioner. Petitioner does not appear even to argue that counsel's letter somehow bolsters his claims.

Accordingly, petitioner's attempt to supplement his petition with the 20 October 2014 letter of his counsel is futile and should be denied.

### B.    Request for Documents

Petitioner's request that the court provide him the documents discussed in his counsel's letter also fails.

Regarding petitioner's request for grand jury testimony, it is mooted by the statement by his counsel in his 20 October 2014 letter that he provided petitioner a copy. Petitioner nowhere challenges the veracity of this statement.

Moreover, petitioner has not demonstrated a particularized need for any grand jury testimony as required. Rule 6 of the Federal Rules of Criminal Procedure allows disclosure of grand jury matters "preliminarily to or in connection with a judicial proceeding." Fed. R. Crim. P. Rule 6(e)(3)(E)(i). "Parties seeking grand jury transcripts under Rule 6(e) must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." *Douglas Oil Co. v. Petrol Stops Nw.*, 441 U.S.

211, 222 (1979). In addition, a petitioner must make "a strong showing of particularized need . . . before any disclosure will be permitted." *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 443 (1983). Examples of such a particularized need include use of "'the grand jury transcript at the trial to impeach a witness, to refresh his recollection, to test his credibility and the like.'" *Douglas Oil Co.*, 441 U.S. at 222 n.12 (quoting *United States v. Procter & Gamble Co.*, 356 U.S. 677, 683 (1958)).

Petitioner has provided no facts or reasons supporting his request for a transcript of the grand jury testimony. Indeed, he has not even identified whose grand jury testimony he seeks. Petitioner's failure to demonstrate a particularized need for the grand jury testimony constitutes an independent ground for denying his request for it.

The court should also deny petitioner's request for a sentencing transcript. Section 753(f) of title 28 of the United States Code states that a free transcript must be provided to an indigent criminal defendant to bring an action pursuant to a § 2255 proceeding "if the trial judge . . . certifies that the suit . . . is not frivolous and that the transcript is needed to decide the issue presented by the suit." 28 U.S.C. § 753(f); *see also United States v. MacCollom*, 426 U.S. 317, 326 (1976). The indigent defendant bears the burden of showing of a particularized need for the free transcript. *See United States v. Hill*, 34 F. App'x 942, 943 (4th Cir. 2002) (concluding that petitioner had not made a satisfactory showing of particularized need for transcripts and other documents). An indigent defendant may not obtain a free transcript "merely to comb the record in the hope of discovering some flaw." *United States v. Glass*, 317 F.2d 200, 202 (4th Cir. 1963).

As with his request for a transcript of grand jury testimony, petitioner has not demonstrated a particularized need for a transcript of the sentencing hearing. This request should therefore be denied as well.

Petitioner has also not demonstrated a need for the government's picture exhibits from the suppression hearing. As with all the other items addressed in his counsel's letter, petitioner provides no explanation of why he needs them. The one photographic exhibit that appears to be in issue in the petition is the photograph of the rifle case. Gov.'s Ex. 11. In Ground 3 of his petition, petitioner argues that this photograph does not adequately show the configuration of the case and that his counsel should have required that the actual case be introduced. *See* Pet. 8. This contention tends to substantiate petitioner's familiarity with the photograph and undercut any further need on his part to review it. For this and the other reasons stated, petitioner's request for the picture exhibits should be denied. *See Hands v. United States*, No. 7:11-CR-98-FL-1, 2016 WL 4995074, at *3 (E.D.N.C. 19 Sept. 2016) (denying petitioner's request to provide copies of exhibits on the basis that petitioner did not demonstrate a need for the copies in his motion).

Petitioner's request that the court provide him copies of a North Carolina judgment sheet and Raleigh Police incident reports is unduly vague. It is not clear to which judgment sheet or incident reports petitioner is referring. Further, the only copies in the record of North Carolina judgment sheets were provided by petitioner himself. *See* Exs. (D.E. 118-1) to Mot. to Am. The record does not appear to contain any Raleigh Police incident reports. Notably, in his statement accompanying the memorandum portion of his petition, petitioner refers to the incident reports from the officers involved in the search of his residence, as well as the evidence property sheet, stating that "all this information is in my discovery." Pet'r's Stmnt. 23. Therefore, he appears to

already have the incident reports underlying the charges against him in this case. Petitioner's request for a North Carolina judgment sheets and Raleigh Police incident reports should accordingly be denied.

## IV.  PETITIONER'S SECOND MOTION TO SUPPLEMENT AND FOR DOCUMENTS OR INFORMATION

On 31 May 2016, an undated letter from petitioner (D.E. 134-1) was filed with the court which requested that an attached letter by him (D.E. 134) addressed to the presiding district judge be provided to her. This attached letter pertains to petitioner's claim in Ground 2 that two of his prior convictions were improperly considered in determination of his base offense level. The letter first describes the claim and then asks the district judge to inform him in "what other way" he could "seek relief on a sentence that is plain error." Pet'r's 31 May 2016 Ltr.

To the extent this set of correspondence is treated as a request to supplement the petition, it is futile and should be denied. It adds no substantive information regarding any of petitioner's claims and, as explained below, Ground 2 of petitioner's petition is meritless.

This set of correspondence also fails as a request for information. It essentially asks that the district judge serve as petitioner's advisor. This, of course, the district judge cannot do. Therefore, as a request for information, this second set of correspondence from petitioner should be denied.

## V.  THE § 2255 PETITION

### A.  Ground 1: Counsel's Failure to Challenge on Appeal the Voluntariness of Lillie Gardner's Consent to Search Petitioner's Residence as a Whole

Petitioner contends that he received ineffective assistance because counsel failed to challenge on appeal the voluntariness of Lillie Gardner's consent to the search of his residence as a whole. Petitioner contends that Lillie Gardner's consent was not voluntary because it was the

product of duress and coercion under the totality of the circumstances, including the presence at the residence of the SEU team, officers bearing automatic weapons, and a K-9 unit, and the location of the house on a dead end and adjacent to a wooded area.

The issue of the voluntariness of the consent to search was not presented by petitioner to the district court and therefore was not preserved for appeal. "[I]ssues raised for the first time on appeal generally will not be considered." *Muth v. United States*, 1 F.3d 246, 250 (4th Cir. 1993) (citing *National Wildlife Fed. v. Henson*, 859 F.2d 313, 318 (4th Cir. 1988)). "Exceptions to this general rule are made only in very limited circumstances, such as where refusal to consider the newly-raised issue would be plain error or would result in a fundamental miscarriage of justice." *Id.* Petitioner has not alleged exceptional circumstances justifying departure from the general rule, and based on the record, there were no exceptional circumstances warranting such departure. Accordingly, counsel was not ineffective for failing to raise on appeal the issue of the voluntariness of the consent to search.

Even if the issue had been preserved for appeal, petitioner's claim would still fail. Counsel "'is not obligated to assert all nonfrivolous issues on appeal.'" *United States v. Baker*, 719 F.3d 313, 318 (4th Cir. 2013) (quoting *Bell v. Jarvis*, 236 F.3d 149, 164 (4th Cir. 2000) (*en banc*)). Counsel has latitude to decide what issues to press on appeal. *Cole v. Branker*, 328 F. App'x 149, 158-59 (4th Cir. 2008). "'[W]innowing out weaker arguments on appeal and focusing on those more likely to' prevail, far from being evidence of incompetence, is the hallmark of effective advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)). "A brief that raises every colorable issue runs the risk of burying good arguments." *Jones*, 463 U.S. at 753. When arguing that counsel failed to raise a specific claim on appeal, the petitioner must show that the ignored claim was clearly stronger

than those counsel did present. *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (citing *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)). In order to determine whether an ignored claim was clearly stronger than those presented, courts determine whether an ignored claim would have prevailed on appeal. *See Baker*, 719 F.3d at 318-20 (analyzing whether petitioner would have prevailed on appeal on the ignored claim); *Lawrence v. Branker*, 517 F.3d 700, 709 (4th Cir. 2008) ("[A]ppellate counsel was only ineffective if his failure to challenge the [ignored claim] fell below an objective standard of reasonableness and, but for that failure, [petitioner] would have prevailed in his appeal.").

Petitioner has not shown that the issue of voluntariness of consent was stronger than those that were put forward on appeal, again, Lillie Gardner's authority to consent and application of the plain view doctrine to the rifle case. As the facts found in the M&R and adopted by the district judge illustrate, there is limited support in the record for the duress and coercion to which petitioner alleges Lillie Gardner was subjected.

For example, when Lillie Gardner gave her consent to search the residence as a whole—as opposed to her subsequent consent to search the storage room specifically—only one member of the SEU team was out in the open. M&R 7-8. The other unit members remained in the van in which they had travelled to the residence. *Id.* at 7. Moreover, Lillie Gardner expressed her consent forcefully: "Lillie responded that she consented to the search, adding that she was tired of having the police coming to the house to look for defendant, that he was trouble, and that she was very upset with him. ([Supp'n Hrg.] Tr. I [D.E. 68] 53:19 to 54:17)." *Id.* at 8.

The court also found, as previously noted, that Lillie Gardner consented two times to search of the storage room specifically. She did it initially when police found the door to the

storage room locked and sought her consent to enter. *Id.* After the police found the rifle case and drug paraphernalia there, they reported their discovery back to Lillie Gardner.

> Lillie became enraged and was adamant that the officers remove all guns from the house. ([Supp'n Hrg.] Tr. I 61:24 to 62:3; 62:10-21; 63:15-18). He also testified credibly that he asked Lillie directly whether she consented to further search of the storage room and that she did consent. ([Supp'n Hrg.] Tr. I 62:10-14).

*Id.* at 9.

After being presented with a consent form by an officer and having the opportunity to telephone anyone she wanted to call, Lillie Gardner told the officer "that she wanted them to remove any gun from the property and signed the consent form." *Id.* at 10.

> The consent form reads:

> I, Lillie Gardner, do consent to the search of [the house] by a law enforcement officer. I am giving my consent to search *knowingly and voluntarily*, no threats or promises have been made to me.

*Id.* (emphasis added).

As noted, to support his contention that Lillie Gardner's consent was not voluntarily given, petitioner relies, in part, on the location of the house on a dead-end road adjacent to a wooded area. It is unclear precisely how these facts contributed to the purportedly dominating police presence. While, as petitioner argues, there were automatic weapons and numerous police officers present at times, as discussed, only one member of the special enforcement unit was in the open when she consented to the search of the house as a whole.

Petitioner also argues that Lillie Gardner told officers during their first visit to the house on 13 July 2011 "that she couldn't give consent to search," citing Supp'n Hrg. Tr. I 27, 28, 34. The apparent implication is that any consent given by Lillie Gardner must have been forced because it would have been contrary to her belief that she could not consent. But the testimony cited, which was given by an officer, shows that she did deny being unable to consent.

According to the officer, "[s]he indicated that . . . we had to wait until Alonzo's aunt [Consuelo Gardner] who was the owner of the house returned home before she would consent to us searching for Alonzo." Supp'n Hrg. Tr. 28:6-8. As found in the M&R, Lillie Gardner was simply stating that any search would have to wait until Consuelo Gardner returned. *See* M&R 4. Consuelo Gardner did, of course, consent after she arrived at the house. *See id.* And the Fourth Circuit ruled that Lillie Gardner had actual and apparent authority to consent to search of the house. *Gardner*, 554 F. App'x at 167.

Petitioner also relies on testimony by Lillie and Darlene Gardner at the suppression hearing, including testimony to the effect that Lillie Gardner was essentially being ordered by police to consent. *See* Pet'r's Mem. 5. In addition, he points to purported inconsistencies in the officers' testimony and other deficiencies in it supposedly diminishing its credibility.

But the M&R found Lillie and Darlene Gardner's testimony not credible to the extent inconsistent with the findings of fact set out therein. *See* M&R 18-20. Conversely, the M&R also expressly found the officers' testimony credible. *See id.* at 17-18. Such credibility determinations, which, again, were adopted by the district judge, are not subject to appellate review. *See United States v. Britt*, 69 Fed. App'x 116, 117 (4th Cir. 2003) (citing *United States v. Saunders*, 886 F.2d 56, 60 (4th Cir. 1989)) (concluding that the district court's decision to deny a motion to suppress "rested on its credibility determinations based on testimony at the suppression hearing and such credibility determinations are not subject to appellate review"). Other arguments advanced by petitioner are similarly unpersuasive.

In the M&R, the court noted on its own initiative, and not at the instance of petitioner, that to the extent the evidence presented an issue as to whether Lillie Gardner's consent was knowing and voluntary, it was knowing and voluntary based on the same considerations showing

the fact of Lillie Gardner's consent, many of which are reviewed above. M&R 20 n.10. The M&R cited specifically the form Lillie Gardner signed acknowledging the knowing and voluntary nature of her consent. *Id.* Petitioner did not object to this portion of the M&R. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985) (a party's failure to file written objections to a portion of a magistrate judge's report after due notice bars the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the purportedly objectionable portion of the report). Thus, although not raised by petitioner, the voluntariness of Lillie Gardner's consent was, in fact, considered and expressly mentioned at the district court level.

Accordingly, petitioner has failed to show that his counsel's election not to challenge on appeal the voluntariness of Lillie Gardner's consent to search the house as a whole met either *Strickland* prong—namely, that his counsel's performance fell below an objective standard of reasonableness or that petitioner was prejudiced by it. The claim in Ground 1 of the petition should therefore be dismissed.

**B.    Ground 2: Counsel's Failure to Object to Inclusion of Two of His Prior Convictions in Calculation of His Offense Level for Sentencing Purposes**

In his second claim, petitioner contends that his attorney was ineffective for not objecting to inclusion of two felony drug convictions in calculation of his base offense level because the convictions purportedly do not meet the definition for "felony drug offense" under 21 U.S.C. § 802(44). This claim is meritless

For purposes of determining a sentence, the provisions of the United States Sentencing Guidelines, not the United States Code, apply. Under § 2K2.1(a)(1) of the Guidelines Manual, a base offense level of 26 is applied

23

if (A) the offense involved a (i) semiautomatic firearm that is capable of accepting a large capacity magazine; or (ii) firearm that is described in 26 U.S.C. § 5845(a); and (B) the defendant committed any part of the instant offense subsequent to sustaining at least two *felony convictions* of either a crime of violence or a controlled substance offense.

U.S.S.G. § 2K2.1(a)(1) (U.S. Sentencing Comm'n 2012) (emphasis added). The Guidelines l define a "felony conviction" as "a prior adult federal or state conviction for an offense punishable by death or imprisonment for a term exceeding one year, regardless of whether such offense is specifically designated as a felony and regardless of the actual sentence imposed." U.S.S.G. § 2K2.1 appl'n n.1 (2012).[9]

Here, the PSR assigned a base offense level of 26 pursuant to § 2K2.1(a)(1) (*see* PSR ¶ 59), based on three prior convictions of plaintiff (*id.* ¶¶ 28, 31, 32). One was a North Carolina state conviction on 23 February 2000 for trafficking in cocaine for which petitioner was sentenced to 35 to 42 months' custody. *Id.* ¶ 28. The other two convictions, which were also in North Carolina state court, occurred on 17 April 2006 and both were for possession with intent to sell and deliver cocaine. *Id.* ¶¶ 31, 32. Petitioner received a sentence of 9 to 11 months' custody for these offenses in a consolidated judgment.[10] *Id.* ¶¶ 31, 32.

Petitioner argues that these latter two convictions do not qualify as "felony convictions" under § 2K2.1(a)(1) apparently because they were not punishable by imprisonment for more than

---

[9] The definition of "felony drug offense" in 18 U.S.C. § 802(44) is in accord. It reads:

> The term "felony drug offense" means an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances.

18 U.S.C. § 802(44).

[10] These two convictions are counted separately even though they were imposed by a consolidated judgment. *United States v. Davis*, 720 F.3d 215, 219 (4th Cir. 2013) held that such sentences must be counted as a single sentence for purposes of U.S.S.G. § 4B1.1, for which the definition of "controlled substance offense" is the same as in § 2K2.1. *See* U.S.S.G. § 2K2.1 appl'n n.1. But *Davis* was issued four days after entry of judgment in this case and is not retroactive. *See Massenburg v. United States*, No. 5:07-CR-194-F-1, 2016 WL 3647781, at *5 (E.D.N.C. 14 June 2016), *mem. & recomm. adopted*, 2016 WL 3667647, at *1 (1 July 2016).

11 months. In support, he states that the 9 to 11 months to which he was sentenced was the presumptive range. Petitioner's analysis is incorrect.

Under the North Carolina Structured Sentencing Act ("the Act"), a sentencing judge is required to "match the offense class and prior record level pursuant to a statutory table, which provides three possible sentencing ranges—a mitigated range, a presumptive range, and an aggravated range." *United States v. Simmons*, 649 F.3d 237, 240 (4th Cir. 2011) (citing N.C. Gen. Stat. § 15A-1340.17(c)). The presumptive range governs unless the sentencing judge makes specific findings that permit departure. *Id.*

> Once the judge identifies the appropriate range, the Act provides that he must choose the defendant's minimum sentence from within that range. [N.C. Gen Stat.] § 15A-1340.17(c). After the judge chooses a defendant's minimum sentence, a separate statutory chart then supplies the defendant's corresponding maximum sentence. *Id.* § 15A-1340.17(d), (e). The Act . . . prohibits a sentencing judge from imposing a maximum sentence higher than the one fixed by the statutory chart. *Id.* § 15A-1340.13(b), (c).

*Id.*

The two convictions at issue for possession with intent to sell and deliver cocaine are classified as class H felonies. *See* PSR ¶¶ 31, 32. The state court assigned petitioner a prior record level of IV. *Id.* ¶¶ 31, 32.

Under the North Carolina sentencing scheme, a Class H felony with a record level of IV, without a showing of aggravated factors, subjects one to a presumptive sentencing range of 9 to 11 months, N.C. Gen. Stat. § 15A-1340.17(c), and a maximum sentencing range of 11 to 14 months, N.C. Gen. Stat. § 15A-1340.17(d). Therefore, although petitioner did face the presumptive range of 9 to 11 months he posits, he faced a maximum of 14 months' imprisonment.

The failure of counsel to raise a meritless argument cannot form the basis of an ineffective assistance of counsel claim. *See Moore v. United States*, 934 F. Supp. 724, 731 (E.D. Va. 1996) ("[T]here can be no claim of ineffective assistance where, as here, counsel is alleged to have failed to raise a meritless argument."). Accordingly, the claim by petitioner in Ground 2 of his petition is subject to dismissal.

### C. Ground 3: Counsel's Failure to Object during the Suppression Hearing to Application of the Plain View Exception to the Contents of the Rifle Case

Thirdly, petitioner asserts that counsel was ineffective for failing to object at the suppression hearing to application of the plain view exception to the contents of the rifle case because the configuration of the case did not indicate that it contained a firearm. Petitioner further argues that counsel was ineffective for not objecting to admission of a photograph of the rifle case (Gov.'s Ex. 11; *see* Supp'n Hrg. Tr. I 113:3 to 114:1) on the grounds that inspection of the actual rifle case was necessary to determine whether its configuration signaled that a firearm was inside and that the photograph included irrelevant incriminating items in which petitioner had a privacy interest.

As an initial matter, these alleged bases for ineffective assistance of counsel were known to him at the time of his guilty plea. Therefore, this claim is barred by the appeal waiver in petitioner's plea agreement (*see* Plea Agmt. ¶ 2.c.) and subject to dismissal on this ground alone.

Alternatively, the issue of whether the configuration of the rifle case brought its contents within the plain view doctrine was addressed on direct appeal. The Fourth Circuit stated:

> The officers here lawfully entered the storage room pursuant to the consent given by [petitioner's] cousin. While searching the room for [petitioner], officers discovered the rifle case. The case was found in close proximity to drug paraphernalia, making its incriminating nature immediately apparent. The officer immediately recognized that the case likely contained a weapon. We therefore conclude that the rifle case was lawfully seized in plain view, and was properly

searched under the plain view doctrine. The district court therefore did not err in denying this portion of the motion to suppress.

*Gardner*, 554 F. App'x at 167-68.

The law does not permit a defendant to relitigate in a § 2255 proceeding an issue resolved on direct appeal, as petitioner is attempting to do here. *See Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976) (holding that a § 2255 petitioner "will not be allowed to recast, under the guise of collateral attack, questions fully considered [on direct appeal]"); *Stanford v. United States*, No. 5:09-CR-202-D, 2014 WL 2157440, at *3 (E.D.N.C. 23 May 2014) (a § 2255 petitioner cannot "relitigate the same issue he lost on direct appeal . . . by changing the label on his claim"), *appeal dismissed*, 585 F. App'x 43 (4th Cir. 2014); *Reese v. United States*, No. 7:08-CR-34-FL-1, 2014 WL 253440, at *12 (E.D.N.C. 23 Jan. 2014) ("It is thus clear that, in an effort to relitigate issues on which the Fourth Circuit already ruled against him, [petitioner] has cloaked—very thinly—his prior arguments in the language of an unconstitutional-as-applied and ineffective assistance of counsel claim. This is something [petitioner] simply may not do."), *rep. & recomm. adopted by* 2014 WL 253440, at *10, *appeal dismissed*, 570 F. App'x 287 (4th Cir. 2014), *cert. denied*, 135 S. Ct. 997 (2015).

In addition, admission at the suppression hearing of the photograph of the rifle case was clearly proper. The photograph obviously enabled the district court to evaluate the configuration of the rifle case for purposes of the plain view doctrine. Petitioner has not demonstrated that the other items in the photograph were unlawfully seized or that their inclusion in the photograph prejudiced him in any way. Petitioner has therefore not shown that his counsel's not objecting to admission of the photograph satisfied either prong of *Strickland*.

Petitioner's claim in Ground 3 is accordingly subject to dismissal on these alternative grounds.

**D. Ground 4: Counsel's Failure to Challenge on Appeal the Voluntariness of Lillie Gardner's Consent to Search the Storage Room Specifically**

While similar to Ground 1, instead of challenging Lillie Gardner's consent to search the entire home, in this claim petitioner contends that Lillie Gardner's consent to search the storage room specifically was involuntary and that counsel was ineffective for not raising this issue on appeal. As with Ground 1, this issue was not presented to the district court and therefore was not preserved for appeal. This fact alone subjects this claim to dismissal.

Further, for the same reasons stated with respect to Ground 1, which included discussion of Lillie Gardner's consent to search of the storage room specifically, petitioner has failed to show that in not challenging the voluntariness of Lillie Gardner's consent to search the storage room specifically his performance fell below an objective standard of reasonableness under the first prong of *Strickland* or that petitioner was prejudiced by the absence of such a challenge under the second prong. Petitioner's claim in Ground 4 is therefore subject to dismissal on this additional ground.

**E. Ground 5: Counsel's Failure to Move for Sequestration of the Government's Witnesses During the Suppression Hearing**

Next, petitioner alleges that counsel was ineffective for failing to move for sequestration of the witnesses during the suppression hearing. Because this claim was known to petitioner at the time of his guilty plea, petitioner is barred from bringing this claim by the appeal waiver contained in his plea agreement. *See* Plea Ag. ¶ 2.c. It is therefore subject to dismissal on this ground.

Furthermore, petitioner has not shown that his counsel acted unreasonably in not moving for sequestration or that he was prejudiced by the absence of sequestration. In his response to the government's motion to dismiss, petitioner indicates that if counsel had made such a motion, it

"would have been more apparent that these officers fabricated Ms. Lillie Gardner['s] consent[] to search." Pet'r's Resp. to Dismissal Mot. 6. This is a conclusory statement for which petitioner does not provide a factual showing. In particular, petitioner has not shown that a different outcome would have been substantially likely had the witnesses been sequestered. *See Richardson v. Branker*, 668 F.3d 128 139-40 (4th Cir. 2012). Accordingly, petitioner's claim in Ground 5 is subject to dismissal on the alternative basis that it does not meet either prong of *Strickland*.

### F. Ground 6: Counsel's Failure to Object to Application of the Two-Level Obstruction of Justice Enhancement in Determining Petitioner's Offense Level for Purposes of Sentencing

Petitioner also contends that counsel was ineffective for failing to object to application of the obstruction of justice enhancement under § 3C1.1 of the Guidelines in determination of his sentence. Section 3C1.1 states:

> If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense by **2** levels.

U.S.S.G. § 3C1.1 (2012).

Petitioner has failed to allege any facts or provide any argument as to why application of § 3C1.1 was erroneous. Regarding this enhancement, the PSR states:

> In dozens of the recorded conversations from the Wake County Jail, [petitioner] and Christian Rhodes (unindicted) discussed plans to obstruct the investigation by having witnesses sign false or misleading affidavits, and by finding someone to falsely claim ownership of the assault rifles. [Petitioner] and Rhodes discussed people they knew without felony convictions who they could convince to claim ownership of the guns, including [petitioner's] cousin, Marcus Gardner (unindicted). During one conversation, [petitioner] and Rhodes initiated a 3-way conference call with Marcus Gardner. When Marcus Gardner reported that he did not have any felony convictions, [petitioner] told Marcus Gardner, "We might need you." Investigators later spoke with Marcus Gardner, who stated [petitioner]

29

did not "straight up" ask him to take possession of the guns. Marcus Gardner acknowledged having an argument with [petitioner] about Marcus Gardner's decision not to claim ownership of the guns.

PSR ¶ 6. Petitioner has failed to show how this finding is erroneous.

The court concludes that petitioner's claim of ineffective assistance of counsel regarding application of § 3C1.1 fails to meet both the performance and prejudice prongs of *Strickland*. The claim in Ground 6 should therefore be dismissed.

**G.    Ground 7:    Counsel's Ineffectiveness in Demonstrating the Purported Involuntariness of Lillie Gardner's Consent to Search as Rendering Petitioner's Guilty Plea Neither Knowing nor Voluntary**

Lastly, petitioner contends that because his counsel was ineffective in securing suppression of the evidence of the firearm and ammunition in the storage room based on the involuntariness of Lillie Gardner's consent, he did not know at the time he pled guilty that this evidence could not lawfully be used against him. Had he known, he says he would not have pled guilty. Therefore, as a result of the alleged ineffectiveness of his counsel regarding the suppression motion, he contends his guilty plea was not knowing or voluntary, and he should be allowed to withdraw it. *See generally Hill*, 474 U.S. at 58.

The first portion of this claim—that petitioner's counsel was ineffective regarding the motion to suppress—is meritless for the reasons previously discussed with respect to Grounds 1, 3, 4, and 5. Moreover, to the extent petitioner argues that his counsel failed to secure suppression of any evidence, he is factually inaccurate. Counsel was successful in obtaining suppression of the contents of the duffel bag and petitioner's statements resulting from the search of its contents. *See* 30 Jan. 2013 Ord. 7-9. Petitioner has failed to show that any error by his counsel led him to plead guilty.

The record shows that petitioner's plea was otherwise knowing and voluntary. "A voluntary and intelligent guilty plea is an admission of all the elements of a formal criminal charge . . . and constitutes an admission of all material facts alleged in the charge." *United States v. Willis*, 992 F.2d 489, 490 (4th Cir. 1993) (internal quotation marks and citations omitted). At petitioner's plea hearing pursuant to Federal Rule of Criminal Procedure 11, the court found he was competent, and petitioner acknowledged that he understood his plea agreement. Rule 11 Hrg. Tr. (D.E. 137) 10:6-9; 13:7 to 14:11. Petitioner had the following exchange with the court:

> COURT: Now, [petitioner], has anyone made any other or different promises to you to get you to plead guilty in this case other than what is contained in this plea agreement?
>
> PETITIONER: No.
>
> COURT: [Petitioner], has anyone threatened you in any way to persuade you to accept the plea agreement or to get you to plead guilty in this case?
>
> PETITIONER: No.
>
> COURT: And you understand, [petitioner], that if you plead guilty to Count 1 of the indictment, that Count 1 is a felony charge and that you will lose your valuable civil rights, and that if you're not a U.S. citizen, that your immigration status may be affected; do you understand all that?
>
> PETITIONER: Yes, I do.
>
> COURT: Do you understand if I accept a plea of guilty from you this morning, that you cannot later change your mind and ask for a trial?
>
> PETITIONER: Yes.
>
> COURT: [Petitioner], have you answered all of my questions truthfully?
>
> PETITIONER: Yes, I have.
>
> COURT: Do you need any more time to think about your plea or to discuss your case with [your attorney] before going forward?
>
> PETITIONER: No.

COURT: Now, [petitioner], how do you plead to Count 1 that is alleged in the one-count indictment? How do you plead to the charge that's been filed against you in the indictment?

PETITIONER: Guilty.

COURT: It's a one-count indictment. That's the only charge that's in the indictment. And so, [petitioner], did you, as the government alleges in the indictment, did you on or about July 13, 2011 in the Eastern District of North Carolina, having been convicted of a crime punishable by imprisonment for a term exceeding one year, knowingly possess in and affecting commerce firearms, that is, a DPMS Model A-15 .223 caliber rifle and a Vector Arms 7.62x39 caliber rifle and ammunition in violation of Title 18 of the U.S. Code, Sections 922(g)(1) and 924? Did you do all that as the government alleged in the indictment?

PETITIONER: Yes.

*Id.* at 14:12 to 15:25.[11] The government then provided a factual basis regarding count one. *Id.* at 16:2 to 18:5. The court found that petitioner was competent and capable of entering into an informed plea and that his plea was made knowingly and voluntarily. *Id.* at 18:11-16.

---

[11] As can be seen, at the Rule 11 hearing, petitioner expressly pleaded guilty and admitted to not only possession of the rifle in the rifle case (*i.e.*, the DPMS Model A-15 .223 caliber rifle) but also to possession of the rifle in the duffel bag (*i.e.*, the Vector Arms 7.62x39 caliber rifle), notwithstanding the court's 30 January 2013 order suppressing evidence of the rifle (and ammunition) in the duffel bag. *See* Rule 11 Hrg. Tr. 11:6-14, 12:6-9, 15:11-25; *see also id.* at 17:4-10 (government's identification of the location of each rifle as part of the factual basis for the guilty plea); PSR ¶ 4 (stating that the .223 caliber rifle was in a rifle case); Compl. 2 (stating that the .223 caliber rifle was in the rifle case and the 7.62x39 caliber rifle was in a "closed bag"). As can also be seen, petitioner's counsel did not object to petitioner's pleading and admitting to possession of the rifle in the duffel bag. (The plea and admission also included ammunition, but because ammunition was contained in the rifle case, and not only the duffel bag, such admission and plea did not necessarily refer to ammunition in the duffel bag. *See* Rule 11 Hrg. Tr. 17:8-11 (government's statement that ammunition was found in the "gun case" as part of the factual basis for the guilty plea); PSR ¶ 4 (stating that ammunition was found in the rifle case and with the other rifle); Compl. 2 (stating that ammunition was found in the "closed bag" and "gun case").)

In his petition, petitioner did not raise the issue of his plea and admission to possession of the rifle in the duffel bag, nor did he raise it on direct appeal. He has therefore abandoned this issue.

Even assuming counsel's failure to object to such plea and admission satisfied the performance prong of *Strickland*, petitioner cannot satisfy the prejudice prong because the inclusion of the suppressed firearm did not result in a harsher sentence. To be sure, petitioner's possession of the rifle in the duffel bag was included by the Probation Office in its description of the offense conduct in the PSR (*see* PSR ¶ 4) and by the court in its descriptions of the offense conduct at the sentencing hearing (*see* Sent. Hrg. Tr. (D.E. 136) 12:18-20, 17:22 to 18:12). But the PSR states expressly that its description is based on the search of the storage room, making no reference to his plea and admission as to the rifle in the duffel bag at the Rule 11 hearing, and there is no indication in the court's statements that it was relying on such plea and admission.

It was not error for petitioner's possession of the rifle in the duffel bag to be considered in his sentencing. At sentencing, "the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a); *see also United States v. Nichols*, 438 F.3d 437, 440-41 (4th Cir. 2006)

32

Petitioner has not provided factual support impeaching his sworn statements at the Rule 11 hearing and showing that his plea was not entered voluntarily and intelligently. For this and the additional reasons stated, petitioner's claim in Ground 7 should be dismissed in its entirety.

## VI. MOTIONS TO EXPEDITE

On 8 June 2016 and 13 July 2016, petitioner filed almost identical motions (D.E. 130 & 132, respectively) to expedite ruling on his petition. In light of the court presently addressing the petition, the motions should be denied as moot.

## VII. MOTION TO ALTER JUDGMENT

On 13 July 2015, petitioner filed a motion (D.E. 131) requesting the court to "relieve him" of the $2,000 fine he was ordered to pay in the court's judgment. *See* J. 6-7. "'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (alteration in original) (quoting 18 U.S.C. § 3582(b)); *see also United States v. Hammerberg*, No. 5:13-CR-145-FL-1, 2014 WL 2768657, at *1 (E.D.N.C. 18 June 2014) (stating that the court "lacks authority to modify the criminal monetary penalties in the judgment if not allowed to do so by statute or rule"). Petitioner has not cited, and the court is not aware of, a statute or rule that would allow for modification of the judgment as requested. Accordingly, petitioner's motion should be denied.

---

(concluding that evidence obtained in violation of the Fourth Amendment may be considered at sentencing). The evidence of petitioner's possession of the rifle in the duffel bag clearly had sufficient indicia of reliability to be accurate.

Finally, only if petitioner had been found to be in possession of three to seven firearms would there have been an increase in the base offense level. *See* U.S.S.G. § 2K2.1 (b)(1) (increasing the base offense level by two levels if the offense involved three to seven firearms). The rifle in the duffel bag, of course, brought the total number of firearms in petitioner's possession to only two.

## VIII. MOTION FOR A STATUS UPDATE

On 5 February 2016, petitioner filed a motion (D.E. 133) requesting an update on the status of his petition. In light of the court's addressing the petition herein, the motion should be denied as moot.

### CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that:

1.    The government's motion to dismiss (D.E. 113) be GRANTED;

2.    Petitioner's petition (D.E. 106) be DISMISSED;

3.    Petitioner's motion to amend (D.E. 118) be DENIED;

4.    Petitioner's motions to supplement and for documents or information (D.E. 111, 134-1) be DENIED;

5.    Petitioner's motions to expedite (D.E. 130, 132) be DENIED as MOOT;

6.    Petitioner's motion to alter judgment (D.E. 131) be DENIED; and

7.    Petitioner's motion for a status update (D.E. 133) be DENIED as MOOT.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until 14 December 2016 to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

Any response to objections shall be filed within 14 days after the filing of the objections.

SO ORDERED, this 23rd day of November 2016.

James E. Gates
United States Magistrate Judge